## No. 1124.

THE STATE EX REL. T. W. NELSON VS. THE POLICE JURY OF THE PARISH OF ST. MARTIN.

The Relator, having a judgment against the Parish of St. Martin for certain warrants, drawn under a Resolution of its Police Jury that they should be paid from the taxes of the years 1865, 1866, 1867 and 1868, seeks by Mandamus to compel said Parish to levy now a sufficient tax, according to the rolls of the current year, to pay said judgment. *Held* that the Relator's right is limited to the terms and conditions under which the warrants were issued, and that he is not entitled to the levy of the tax prayed for.

APPEAL from the Twenty-first Judicial District Court, parish of St. Martin. *Fontelieu, J.*

---

*Breaux & Hall* for the Relator and Appellee:

First—Notice to counsel of the day of assignment merely, of case pending, is sufficient. Mooney vs. Hopper, 3 L. 445; Cooley vs. Seymour, 9 L. 276.

Second—Counsel coming into case, bound by agreement in writing made by counsel having

State ex rel. Nelson vs. Police Jury of the Parish of St. Martin.

control of case at date anterior, district attorney was, therefore, bound to try the case as requested.

Third—The case was remanded simply to ascertain whether the original case of Nelson vs. St. Martin was founded upon a contract or not; it is now too late to urge any defense which could have been urged on the trial of the case. 32 An. 884; 28 An. 578.

Fourth—As to all defenses now attempted to be urged, the plea of *res adjudicata* prevails. 28 An. 578.

Fifth—Mandamus should be made peremptory. 32 An. 747; 96 U. S. 607.

*C. H. Mouton,* District Attorney; *Alcibiades DeBlanc, J. E. Mouton* and *Edward Simon,* for Defendants and Appellants:

First—An order to show cause why a mandamus should not be made peremptory is a rule, and the defendant is entitled to notice under article 841 C. P.

Second—The judgment of the Supreme Court remanding this case was equivalent to an indefinite postponement, and the defendant was entitled to notice of the order fixing the case to be tried in chambers, in the same manner as if plaintiff had taken a new rule. No one can be forced to go to trial without notice or citation.

ON THE MERITS.

Third—The act of the president of a police jury is not the act of the police jury, and the consent of the president of a police jury given to a contract is not the *consent* of the police jury, unless authorized or sanctioned by that body in the manner provided for by law.

Fifth—Police juries cannot appropriate money and levy taxes, except it be by an ordinance or resolution; and all such ordinances or resolutions must be signed by their president and attested to by their clerk; until then it is but a mere project.

Fifth—There can be no contract without the concurrence of the consent of the contracting parties.

Sixth—The certificate of a clerk *pro tem.* of a police jury that a certain resolution or ordinance of a police jury exists, is not conclusive of the fact, and is of no weight in presence of most positive proof to the contrary.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J. The relator applies for the levy by *mandamus* of a special tax, by the defendant, to pay a judgment in his favor for $4500, and interest, against the parish of St. Martin.

Several times has the relator already submitted his grievances to this Court. 28 An. 578; 30 An. 1103; 32 An. 884.

The case was before us at last term. We found the relator in presence of the defense, that the law under which he sought relief had been repealed, and that the proceeding was unwarranted. To this attack he replied that the repeal was inoperative, as his judgment rested on a contract, shielded by the Constitution of the United States, which protects the obligations thereof from all impairment.

There was no allegation of a contract in the petition. Still, with a view to afford the relator an occasion to amend, we thought it our duty "in furtherance of the ends of justice, to remand the case, in order that the relator may have an opportunity of establishing that his judgment is founded on a contract, if such be the case, and that the defendant

may adduce such further evidence and make such other defenses as the nature of the suit may require." 32 An. 888.

We did not mean or say, that the case in which the judgment relied upon was rendered, should be reopened, and that the issues *involved* and *determined* should be tried *de novo*. We would have been powerless to do so. We merely intended to permit the relator to allege and prove a material fact, in support of the present proceeding, viz: a protected contract.

On the trial, on the remandment, he, however, assumed to prove, in the absence of averment, the existence of the contract invoked, not only by the record in which the judgment was obtained, but also by supplementary evidence, to the introduction of which objection was made, the propriety of which we deem it unnecessary to pass upon.

Conceding *arguendo*, that the relator has averred that his judgment is predicated on a contract; that the record in the case mentioned and the additional proof establish a contract (questions upon which we express no opinion), we are irresistibly driven to the inquiry, whether the relator, under his judgment and under the contract, is entitled to the special tax which he demands, over and above the constitutional limit, if a transgression be necessary.

The judgment rendered has become definitive. It constitutes *res judicata*, and can no longer be impugned, as to issues involved and determined. Whatever issues it settles, are irrevocably conclusive upon the parties to it; but what is it, that was at issue; what is it that it adjudicates; what is it that it is based upon?

The question presented for solution was: shall the plaintiff recover judgment for the amount claimed, and shall a tax be levied to pay such judgment? The issue was not, whether the claim was based on a contract or not; there was no contention on the subject; and the judgment does not pass upon any such question. It is true that the defendant might, if a contract existed, have resisted the prayer for the levy of a special tax, and thus raised an issue as to the existence and validity of such contract. The defendant did not do so, and no issue was formed and determined on that subject. The plaintiff and the court which rendered the judgment, acted, no doubt, under the impression that the law then in existence required that a provision should be made at the time plaintiff's claim was liquidated,—for its payment by the levy of a tax. R. S. Secs. 26, 28, 29, 30, 47, 48 and 49.

The judgment, therefore, was simply for a sum of money and for a tax to pay it. It would have necessarily been the same, had the suit been one for damages, founded on no real contract at all.

We, therefore, remanded the case for information as to the consideration of the judgment, in order to enable us to determine the

question of impairment of the obligation of a contract, raised by the relator.

But, were it not so, the right of the relator to a tax has been by himself submitted, as *res nova*, for determination.

By the judgment rendered in 1873, liquidating his demand, a tax was ordered to be levied to pay it, at *a sufficient* rate per cent. upon the assessment of the *current* year.

It is manifest that this judgment has not been satisfied by payment or executed by the levy of the tax directed, otherwise why the present proceeding ?

By the lapse of time and the force of circumstances, it is clear that this judgment, as regards the levy of the tax, has ceased to be executory, and has passed out of existence, inasmuch as the defendant cannot, under its terms, be required to do *nunc*, in 1881, what it directed to be done *tunc*, in 1873.

By the present proceeding and by his course in the lower court, in adducing evidence other than the record in the case in which the judgment was rendered, the relator has admitted his legal inability to have that portion of the judgment for the tax, *vi terminis*, executed, and its *consequent* caducity. He has abandoned all pretensions to its enforcement, and seeks now at the hands of the Court another and different judgment, allowing him a tax of ——— per cent. on the property of the parish, according to the assessment rolls thereof for the *current* year, to pay his judgment of 1873. He has thereby reopened the question of his right to such a tax, and of the existence, validity and extent of his claim under *the contract*.

The judgment of 1873 fixed no percentage rate of assessment, and so was not executory, as it left the *quantum* of the rate within discretion. The judgment appealed from is definite, and directs a levy of ten mills, if necessary, over and above the *quantum* of taxation, limited by article 209 of the Constitution.

As the relator has undertaken, not only to show a specific contract, but also the nature and extent of that contract, he has opened the door to the defendant, to establish that, under the terms of such contract, he is not entitled to the remedy sought by him.

What is the evidence now before us on the subject ?

We gather from the record, as it is now presented, that the judgment was obtained on two notes or bonds or obligations signed by the president of the police jury of the parish of St. Martin, on the 5th of October, 1868, purporting on their face to have been issued in pursuance of authority delegated by a resolution of that body, adopted on the 16th of July previous, and identified with a notarial act of even date with them.

The resolutions authorized the president of the police jury to draw on the parish treasurer warrants in favor of the municipal authorities of the town of New Iberia, for $4500, for the building of a bridge over Bayou Teche, within the limits of the corporation, payable, to the extent of $1000, out of a special appropriation on the tax of 1866, and for $3500, out of any surplus funds in the hands of the treasurer, the proceeds of the taxes of 1865, 1866, 1867 and 1868.

It was not until the 5th of October following, that an act was passed between the president of the Police Jury and the town authorities of New Iberia on the subject, and that the warrants, under the form of *promises to pay*, were drawn. By Act 208, approved October 30th, 1868, the town of New Iberia was detached from the parish of St. Martin, to form part of another parish known as the parish of Iberia. The act is silent as to the mode of payment of the indebtedness incurred and to be satisfied by the parish of St. Martin, enuring to the benefit of the detached territory. To all appearances, it was only *after* the dismemberment had been effected, that the bridge was contracted for and constructed. There is nothing to show that the work was done, but the inference is unavoidable, from the fact that the obligations were uttered by the municipal authorities of New Iberia and are now held by the relator, who has alleged and established title to them, contradictorily with the police jury of St. Martin parish, in the shape of the judgment declared upon and made the foundation of the present proceeding. Those obligations were the inducements offered and accepted for the construction of the work of public improvements.

If it be legal under the peculiar and unfortunate circumstances of this case to fasten the responsibilty for the payment of those obligations on the parish of St. Martin, it is likewise lawful and just besides, to hold their owner to a strict observance of the terms and conditions under which they were issued, which he accepted, and which have not been, in any manner, subsequently modified by the parish of St. Martin. While the relator is entitled to all the rights which the "promises to pay," under the resolution, the act and the judgment, confer,—he cannot escape the obligations which they impose or the limitations with which they have been surrounded.

The resolution of the 16th of July, 1868, being expressly referred to in the body of the obligations owned by the relator, forms part of them, the more so as it is also mentioned and reiterated in the notarial act with which they are identified.

If there exist a contract, it is that evidenced by the resolution, the act executed in furtherance of it, and the obligations uttered in conformity with it, and which were recognized as binding on the parish of St. Martin. To that contract the relator points as the foundation of the

OPELOUSAS, JULY, 1881.                    1127

State ex rel. Nelson vs. Police Jury of the Parish of St. Martin.
present proceeding,—of that contract only, can he seek a specific per-
formance. Under that contract he is entitled to be paid in a particular
manner exclusive of all others, by specific appropriation and covenant.

The resolution to which the obligations refer declare that these shall
be paid to the extent of $1000 out of taxes of 1866, and to the extent of
$3500 out' of any surplus funds in the hands of the parish treasurer as
the proceeds of taxes of 1865, 1866, 1867 and 1868.

The relator seeks in this action the immediate levy of a tax on the
taxable property of the parish according to the assessment roll of the
current year, sufficient to realize the amount needed to pay the judg-
ment in his favor for $4500, with interest and costs.

He is clearly not entitled to that relief.

In ruling as we do, we leave out of view not only article 209 of the
Constitution in force, but also Act 56 of 1877, charged as impairing the
obligation of the alleged contract, and which were both intended for
public relief. We are thereby dispensed from the necessity of deter-
mining the question of impairment of such contract. We decide that,
under the Constitution and laws of the State, and under the evidence,
we are justified in restricting relator to the terms of the contract which
he invokes, and which provides for payment of his claim, in a manner
different from that which he demands. We hold the parties to their
engagements and render them the justice to which they are entitled,
under the exceptionally complicated circumstances of the case submit-
ted for determination.

We think the judge a quo erred in his conclusions.

It is, therefore, ordered and decreed that the judgment appealed
from be reversed; and proceeding to render such judgment as should
have been rendered, it is ordered, adjudged and decreed that there be
judgment for the defendant, rejecting the demand of relator, with costs
in both courts.

Messrs. Justices Levy and Fenner recuse themselves: the former
having been of counsel in the case, the latter having been consulted as
counsel in a similar case, and being individually interested in an analo-
gous suit, to be determined in the same manner as the present one.

The remaining three members of the Court being unable to concur,
their Honors G. W. Hudspeth, District Judge of the District Court for
the Thirteenth Judicial District, and John Clegg, Judge of the District
Court for the Twenty-fifth Judicial District, were called upon, under the
provisions of article 85 of the Constitution, to sit in the place of the
Justices recused, and have done so.

Mr. Justice Tood dissents from the opinion and decree of the Court,
thus composed of their Honors E. Bermudez, Chief Justice; F. P. Poché,
Associate Justice; and G. W. Hudspeth and John Clegg, District Judges.

State ex rel. Nelson vs. Police Jury of the Parish of St. Martin.

DISSENTING OPINION.

TODD, J. On the 29th of November, 1873, the relator obtained a judgment against the parish of St. Martin for $4500, with eight per cent. interest per annum thereon from the 5th of October, 1868. No appeal was taken from this judgment. In 1875 the parish brought an action to annul this judgment, on grounds assailing its consideration, and the authority of the police jury of the parish to contract the debt on which it was rendered. This action was brought by appeal to this Court, which rejected the demand for the reason declared, " that all the defenses to the judgment there urged might have been pleaded as defenses to the suit in which the judgment was rendered."

See James S. Robichaud, President Police Jury, vs. Thomas W. Nelson et al., 28 An. 578.

The judgment against the parish in favor of relator, rendered in 1873, as stated, ordered the assessment and collection of a special tax sufficient to pay the amount thereof, the tax to be levied and collected, by the terms of the judgment, immediately after its rendition.

The relator alleging that, notwithstanding repeated demands, the Police Jury of St. Martin had refused to pay the judgment or assess any tax for its payment, applied to the District Judge of said parish for a mandamus to compel that body to assess and the tax collector to collect a sufficient tax to pay the debt. The mandamus was granted and made peremptory by the District Judge. An appeal was taken from his decision, and the case came before this Court at the last term held here (Opelousas) in 1880.

The case was heard on appeal and remanded to the lower court. The cause or reason of the remanding will be more fully understood by referring to the language of the court in the opinion rendered on the occasion, which I quote in part, the part bearing on this particular point, as follows. " The present proceeding is instituted against the Police Jury of the parish of St. Martin, and has for its object to compel them by mandamus to assess, collect and apply a special tax for the payment of the relator's judgment.

" The application is resisted on two grounds :

" 1. The State and parish tax collector was not made a party.

" 2. The law under which the judgment was rendered for the tax and application of the tax was repealed by Act No. 56 of 1877. As a corollary, it was argued in the pleadings that said law being essentially a remedial law its repeal did in nowise impair the relator's rights, but merely suspended or abolished one of the means by which his said vested right could be exercised or executed; it is, therefore, valid and constitutional. The judge directed the assessment of a special tax of one per cent and the police jury has appealed from it.

State ex rel. Nelson vs. Police Jury of the Parish of St. Martin.

"First. The State and parish tax collector was served and has joined issue, and is therefore a party.

"Second. The Act of 1877 should be no bar to the exercise of the remedy accorded by law to the plaintiff, and which was in force at the time he obtained his judgment, and which, not only theoretically but practically, formed part of that judgment, *provided* that judgment be founded on a *contract.*

"The only evidence before us is the judgment itself. Neither the pleadings nor the evidence on which the judgment was rendered are in the record. The very petition in the present proceeding is silent on the subject of the obligation of the parish to pay the judgment as springing from a *contract.*"   *   *   *   *   *   *   *

"If the judgment relied upon was not founded on a contract, we would be powerless to enforce its payment in the manner proposed, prohibited, as we would be from so doing by article 209 of the Constitution of 1879, limiting taxation to ten mills, as was held in State ex rel. Folsom vs. City of New Orleans, recently decided."   *   *   *

"We think it our duty, in furtherance of the ends of justice, to remand the case in order that the relator may have an opportunity of establishing that his judgment is founded on a *contract,* if such be the case, and that the defendants may adduce such further evidence, and make such other defenses as the nature of the suit may require."

It is clear to my mind, from the foregoing, that the object of remanding the proceeding to the lower court was to ascertain whether the judgment in question was founded on a contract or not. If it should prove, according to the evidence, to be adduced in the lower court—to be founded on a contract, then there was a strong implication, according to my construction, of the language of the former opinion just quoted, that, a *contract* being shown, as the basis of the judgment, then the relator would be entitled to the remedy sought, and the mandamus would be made peremptory.

It in effect said to the relator: return to the lower court, prove that your judgment was upon a contract, and receive your writ to compel its payment.

It is stated in the opinion of the majority of the Court just read, that the terms of the remanding did not authorize or mean a re-opening of the case, in which the judgment had been rendered, with a view to the admission of evidence affecting the merits or consideration of the judgment. Besides, it was beyond the power of this Court to remand for any such purpose. The judgment had been rendered for seven years or more, and a demand for its nullity had been rejected. It was *res adjudicata,* a finality *conclusive* as to the fact that the parish owed the relator the debt evidenced by the judgment. Whether it was a righteous

or an unrighteous debt was beyond inquiry. The only question left open to be asked and answered was: *was the judgment founded* on a contract, *or did it grow out of a tort;* for it must have been based on one or the other.

The case was remanded, the necessary inquiry made and the evidence adduced which, upon my mind leaves not the shadow of a doubt that the judgment against the parish of St. Martin, which the relator is here before us asking to be enforced, was founded on a contract; and in my opinion, he has fulfilled the sole condition on which the exercise of his right was suspended by our previous decree, by establishing that his judgment *was* founded on a *contract.* With this showing, I think he can now rightfully claim the remedy he seeks. To refuse it, would be, virtually, in my opinion, denying him the protection to which he is entitled under the clause of the Federal Constitution forbidding the impairment of a contract; a protection which this Court recognized as bearing on this question in its former opinion referred to, and more *emphatically* in the case of the State ex rel. Martin vs. Police Jury of Caddo, 32 An. 1028, when it declared, referring to the obligations of another parish, that "the contract in existence between the bondholders and the parish of Caddo is protected from impairment by the Federal Constitution, and must be enforced." This was the language of an unanimous Court, as was that quoted above from our former opinion in this case.

The judgment was rendered upon notes executed by the President of the police jury of St. Martin, and those notes given for the building of a bridge.

I see no reason for extending inquiry beyond those simple facts, as they, alone, have a bearing on this question of a contract. And in view of this single and simple issue, in the present state of the proceeding before us, I cannot readily appreciate the bearing and pertinency of the questions discussed in the majority opinion about the injustice of the debt or the hardship of its' payment by the debtor, particularly since it is admitted in that opinion that the judgment is *res adjudicata.* Nor do I find any thing in the course pursued by the relator's counsel in the introduction of his evidence on the last trial in the lower court upon the question of contract or no contract, that opened the way to a broader investigation, and rendered the matter mentioned a legitimate subject of discussion in this case. All that he did in this connection strictly pertained to proving his contract.

It is highly probable, that if the considerations, now so ingeniously and ably urged touching this debt, had been used as defenses against the demand before judgment, the judgment would never have had an existence. This Court in the decision referred to in the suit of nullity cited (28 An. 578), declared that similar considerations, or others quite

as formidable, though urged in a proper action, and at a more seasonable time, could not be listened to. I am equally of that opinion now.

Nor can I see any thing in the failure or refusal of the judgment debtor—the parish of St. Martin—to obey the mandate of the Court embraced in the judgment, and levy the tax ordered to pay the debt at the time ordered, can now be held as giving the parish an immunity from the debt, and enabling it to so profit by the default, as virtually to destroy the remedy of the creditor, and leave him with a barren judgment, stripped of all means of enforcing it. Such I construe to be the effect of the decrée just rendered, that it restricts him expressly to the tax ordered in 1873 by the judgment, when rendered, as the sole resource for getting his money, when it must be apparent that no such fund was ever raised, and had it existed, would long since have disappeared.

For these reasons, hastily prepared in the limited time allowed me, I dissent.